OPINION
Chief Justice SMITH:
INTRODUCTION
On the evening of August 8, 1995, the Defendant James “Bo” Sorrell had been drinking. In the early morning of August 9, 1995, the Defendant is alleged to have assaulted his wife at their home by striking her in the face and by pointing a loaded pistol at her. The Defendant’s daughter ran to the neighbor’s house, summoned the police, and then returned to the house where she retrieved the loaded pistol from her father. The Defendant was arrested that morning and charged with Domestic Abuse, Aggravated Assault, and Criminal Endangerment.
The Defendant’s wife, Christine Sorrell, initially provided a taped statement to the tribal police detailing the incident. According to her taped statement, the intoxicated Defendant aw^akened her from her sleep, became argumentative, and hit and slapped her. The Defendant then allegedly took a hand gun and spun the cylinder, Russian roulette style, and pointed the gun at his wife and said: “do you want this or should I take it?” Their daughter was able to retrieve the loaded pistol from the Defendant before the police arrived. The Defendant’s wife later recanted her statement. She testified she had misrepresen *84 ted the facts in her recorded statement because—based on a prior experience with the Defendant when he had threatened to eommit suicide—she felt the Defendant did not receive adequate follow up care to prevent another suicide attempt.
A pre-trial hearing was held on September 11, 1995. On February 29, 1996, the Defendant filed a motion in limine because of concerns that the prosecution might introduce evidence of other crimes, wrongs or acts by the Defendant. The Defendant argued that introduction of such information would be prejudicial under Rule 403 of the Federal Rules of Evidence and impermissible under Rule 404 of the Federal Rules of Evidence (the “prior acts” rule). The prosecution opposed the motion in limine on the grounds that the Defendant was untimely in filing the motion because the trial date was then scheduled for March 7, 1996. The prosecution also opposed the motion on the grounds that the Court should reserve ruling until trial because “there is not a request to the Court by the prosecution to introduce evidence of prior crimes, wrongs, or acts” and thus the “Court has no way of knowing the purpose of the entry of such evidence and whether or not the purpose fits one of the allowed purposes set forth in Rule 404(b).”
On March 8, 1996, Honorable Leslie J. Kallowat issued a written order denying the motion in limine on the grounds that it should have been filed by the pretrial motions date of February 12. The Court said it would “wait until the issue is raised at trial. At that time, the Court will require the Tribal Prosecutor to explain the purpose of introducing evidence and will rule on the question.” A jury trial took place on April 15, 1996. The trial court allowed four witnesses to introduce prior acts testimony involving approximately eight separate incidents. At the end of the trial, one limiting instruction was provided regarding the admission of the prior acts testimony. The Defendant was convicted on all three counts. The Appellant appeals on numerous grounds.
We reverse on the grounds that the trial court abused its discretion in admitting into evidence the series of prior acts testimony.
I. Admission of Prior Acts Evidence
The following is a summary of the prior acts testimony admitted into the trial over the objection of counsel for the Defendant:
Neighbor Rosalie Sheridan testified that (on unspecified dates) Christine Sorrell, or the children, came to her house to “call the police.” There is no explanation, nor lust hand testimony by Ms. Sheridan, of any specific incident that provoked the request to call the police. The testimony’s implication is that the children came over to call the police because of domestic violence, but the brief questioning and answers provide no explanation of the incidents, nor the Defendant’s role. TR at 16-18.
Neighbor and tribal dispatcher Dan Neuman testified that (on unspecified dates) prior to this incident the Sorrell children had come over to his house (apparently to call the police). He states that “the kids have been there, and they’ve said some things about them fighting,” but Neuman had never gone to their house. TR at 31.
Tribal detention officer Willie Birthmark testified that (on unspecified dates) there have been past incidents of domestic violence at the Sorrell household. No details of any kind were provided to substantiate the allegation. He also testified that (on an unspecified date) Bo and Christine Sorrell had told him that a gun had discharged at the Sorrell house in the past. No other details were provided by him defining the nature of this *85 gun discharge incident, except that the only incident he could recall involved a .357 and the gunshot put a hole in the wall. TR at 46-47.
The prosecution also handed Officer Birthmark jail records indicating charges against Bo Sorrell. The prosecutor had Birthmark read from these records to the jury the fact that Bo Sorrell did jail time for charges of assault and battery in 1986 and 1987. No explanation or details were put into evidence as to the facts surrounding these charges. The alleged victim(s) is not identified. He also read to the jury a jail entry for Bo Sorrell dated August 5, 1995 for domestic abuse. No explanation or details were put into evidence as any facts surrounding these charges. The alleged victim is not identified. TR at 53-54
Tribal officer Les Clairmont testified that he “had been advised” that (on unspecified dates) tribal officers have gone to the Sorrell residence on domestic violence calls. No explanation or details were put into evidence, nor was the victim identified. TR at 83.
This is a case of first impression in this Court. This evidence question is governed by the Federal Rules of Evidence, as required by Chapter III, Section 14 of Tribal Ordinance 36B. For this reason, this Court will primarily look to federal case-law interpreting the Federal Rules of Evidence for guidance. A lower court’s admission of prior acts evidence under Rule 404(b) is reviewed for abuse of discretion. United States v. Hinton, 31 F.3d 817 (9th Cir.1994); Arizona v. Elmer, 21 F.3d 331, 335 (9th Cir.1994).
Rule 404(b) of the Federal Rules of Evidence provides:
(b) Other crimes, wrongs, acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.
Except for the notice language, the State of Montana has adopted the identical version of Rule 404(b) in its Rules of Evidence.
Rule 404(b) forbids the introduction of evidence pertaining to a defendant’s prior crimes or wrongful acts when that evidence will be used to show “that the defendant has a bad character and is therefore more likely to have committed the crime with which he is charged.” United States v. Brown, 880 F.2d 1012, 1014 (9th Cir. 1989). Such evidence may be admissible, however, for the other purposes set forth in Rule 404(b). The Ninth Circuit has promulgated a four-part test to determine the admissibility of other act evidence under Rule 404(b):
(1) The other act evidence must tend to prove a material point;
(2) the other act must not be too remote in time; (3) the evidence must be sufficient to support a finding that the defendant committed the other act; and (4) in some cases, the other act must be similar to the offense charged.
Arizona v. Elmer, 21 F.3d at 335. See also United, States v. Ararrdmla-Ruiz, 987 F.2d 599, 602 (9th Cir.1993); United States v. Bibo-Rodriguez, 922 F.2d 1398, 1400
*86 (9th Cir.), cert. denied, 501 U.S. 1234, 111 S.Ct. 2861, 115 L.Ed.2d 1028 (1991).[1]
The prior acts testimony admitted into evidence here can be grouped into three types: evidence of past domestic violence, evidence of prior assault charges, and evidence of a gun discharging at the Defendant’s residence. This Court will apply the Ninth Circuit’s test for admissability.
A. Allegations of past domestic violence
Rule 404(b) provides that prior acts evidence may be admissible for the purpose of establishing “motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.” The first prong of the Ninth Circuit’s test, (that the evidence proves a material point) is satisfied here. The Prosecutor argued that the prior acts testimony goes to the Defendant’s motive, intent and knowledge—that the Defendant wanted power and control over the victim. This purpose for admission appears appropriate, and the Defendant did not challenge admissability on these grounds.
The Ninth Circuit does not have a bright-line rule concerning when a past act becomes too remote for proper consideration under Rule 404(b). “Depending on the theory of admissibility and the similarity of the acts ... some remote acts may be extremely probative and relevant.” United States v. Spillone, 879 F.2d 514, 518 (9th Cir.1989). As a result, evidence of acts that occurred over ten years prior to the matter then before the court has been deemed admissible. United States v. Hadley, 918 F.2d 848, 851 (9th Cir.1990). In the matter at hand, the allegations of past domestic abuse—those that have dates—are dated five or six months prior to the incident in question here. See, e.g., TR at 16, 18. Especially because of their similarity to the charged offense, they do not appear too remote in time to disqualify them under Rule 404(b). See United States v. Ross, 886 F.2d 264 (9th Cir.1989).
Under the third prong, evidence of past acts must be sufficient to support a finding that the defendant committed the other act. This prong of the test will be satisfied so long as enough evidence about the prior acts is presented “for a jury reasonably to conclude that the acts oc *87 curred and that the defendant was the actor.” United States v. Hadley, 918 F.2d at 851. Although “unsubstantiated innuendo” is insufficient to meet this standard, the uncorroborated testimony of a single witness to the past act has been deemed enough “to satisfy the low threshold required by this part.” United States v. Hinton, 31 F.3d at 823. The testimony in this case regarding Bo Sorrell’s past acts of domestic violence fails to meet even this low threshold.
As summarized above, witnesses Sheridan, Neuman, Birthmark, and Clairmont failed to provide sufficient foundation and factual context to allow a jury to reasonably conclude that these prior acts occurred and Bo Sorrell was the actor. That children came to the neighbor’s house on unspecified dates to call police for unspecified reasons does not satisfy this requirement. That children told another neighbor on one occasion that their parents had been fighting on unspecified dates does not satisfy this requirement. Officer Clair-mont’s testimony that he was “advised” that on unspecified dates tribal officers had gone to the home for domestic abuse does not satisfy this requirement. In cumulative fashion, this conclusory testimony was used to impugn the character of Bo Sorrell without the required specific evidence of past wrongs.
Using innuendo and implication, the prosecutor’s witnesses offered conclusory and often second-hand evidence to paint the Defendant as someone prone to violence, a man of bad character. This testimony was admitted notwithstanding counsel for Defendant’s objection that it lacked the specificity to show his client had committed the prior acts. This is precisely the scenario Rule 404(b) seeks to avoid. These facts distinguish this case from Hinton, where the sole testifying witness was the defendant’s wife, who was the victim of both the past acts and the charged offense. As a result, the proffered evidence of Bo Sorrell’s past acts of domestic violence does not satisfy the Ninth Circuit’s Rule 404(b) test, and should have been excluded.[2]
B. Allegations of Fast Assault
The proffered evidence of Bo Sor-rell’s past acts of assault does not satisfy the elements of the Ninth Circuit’s Rule 404(b) test, and should have been excluded. The prosecutor questioned Officer Birthmark using jail records showing that Sor-rell was in jail under charges of assault and battery in 1986 and 1987. TR at 54. No victims were identified. No facts surrounding the charges were provided. No proof of conviction was introduced. Under protest from the defense, the prosecutor withdrew^ this line of questioning—but only after the horse had left the barn. These charges were brought 10 and 11 years before the trial, and no evidence was inferce duced to show why this gap in time should be overlooked under the circumstances.
The prosecution argued that evidence of Bo Sorrell’s past assaults was offered to shed light on his motive and desire for “power and control” over his wife. Appel-lee’s Brief at 11. However, no evidence was offered linking these prior assaults to his wife or children. No context is provided to illustrate how they demonstrate an intent to exercise power and control over his wife and child. “The prior wrongful acts must establish a motive to commit the crime charged, not simply a propensity to *88 engage in criminal activity.” United States v. Brown, 880 F.2d at 1015. The only logical inference that can be drawn from this evidence is that Bo Sorrell has a propensity for violence, which he must have acted on ten years later. This is precisely the use of evidence that Rule 404(b) forbids. No limiting instructions were given by the trial court to disregard this testimony, even after the prosecution “withdrew” his line of questioning.
C. Allegations of Prior Weapon Discharge
The prosecution contends that Officer Birthmark’s testimony about a previous gun discharge in Bo Sorrell’s house was offered to refute the defendant’s testimony that his children are careful around guns, and that any danger he put his daughter in by virtue of giving her a loaded gun during the incident in question was accidental. Appellee’s Brief at 12. The theory seems to be that since a prior mishap had occurred in the house, the defendant knew or should have known of the danger that his firearms posed to his children. Viewed in this light, the prior occurrence speaks to Bo Sorrell’s knowledge or intent as it relates to his giving Janell the gun during the incident in question. In this case, intent is an element of the charge of criminal endangerment. Thus the evidence of prior acts of abuse against Christine Sorrell satisfies the first prong of the admissability test.
 It is impossible to apply the remoteness in time prong of the Rule 404(b) test to the weapons discharge incident since there is no indication in the record of when the prior gun discharge occurred. The prosecutor failed to meet its burden that the prior incident was not too remote in time. More importantly, the prosecutor fails to satisfy the third prong of the ad-missability test since she produced no facts or evidence to support a finding that the defendant is responsible for the prior gun discharge incident in a manner relevant to the instant case. Officer Birthmark offered a conclusory statement that a gun had gone off at Bo Sorrell’s residence. TR at 47. No testimony was presented showing that Bo Sorrell discharged the gun or was in any way associated or responsible for the prior gun incident. Again, innuendo and implication point the finger at Bo Sorrell as causing a gun to discharge at his home, but no factual testimony backs up this finger pointing. As a result, the proffered evidence of the prior gun incident does not satisfy the Ninth Circuit’s Rule 404(b) test, and should have been excluded.
II. Rule 403 Balancing and Limiting Instructions
Even assuming arguendo that the prior acts evidence survived the Ninth Circuit’s four-part test, the inquiry into whether its admission was an abuse of discretion would not be complete. “[E]ven if all four conditions are met, the evidence may still be excluded if under a Federal Rule of Evidence 403 analysis its probative value is substantially outweighed by the danger of unfair prejudice.” United States v. Bibo-Rodriguez, 922 F.2d at 1400-1401. Abuse of discretion is the proper standard of review for the Rule 403 inquiry. Id. at 1402.
One factor that may figure heavily in the Rule 403 balancing process is the existence and nature of any limiting instruction the trial judge gave the jury concerning the prior acts evidence. Absent a request by the defendant, a trial judge’s failure to give a limiting instruction regarding prior acts evidence is not necessarily reversible error. United States v. Bradshaw, 690 F.2d 704, 709 (9th Cir. 1982). However, “[[limiting instructions may reduce or eliminate prejudice which *89 would otherwise occur.” Id. Properly administered limiting instructions may have the effect of “bullet-proofing” a decision to admit prior acts evidence from reversal. See, e.g., United States v. Maiming, 56 F.3d 1188 (9th Cir.1995); United States v. Hinton, 31 F.3d at 823. C.f. United States v. Miller, 874 F.2d 1255, 1270 (9th Cir.1989)(holding that the lack of a proper limiting instruction rendered erroneous the admission of a prior act of the defendant). Poorly crafted limiting instructions, on the other hand, may be prejudicial in themselves and be grounds for reversal. See, e.g., United States v. Bradshaw, 690 F.2d at 710 (citing United States v. Aims Back, 588 F.2d 1283, 1286-1287 (9th Cir.1979)).
By denying the motion in limine, the trial judge reserved the ruling on prior acts testimony for the date of trial. This had the effect of placing the Defendant at a disadvantage as he had sought to force disclosure of any prior acts testimony that would be offered, and present his arguments for exclusion—without the jury present. The risk of prejudice is also heightened in this case because the Defendant had no clear notice of the specific testimony and evidence of prior acts that the prosecution would attempt to introduce.[3]
When the prior acts testimony and evidence was offered before the jury at trial, the prosecution failed (for the reasons discussed above) to establish the necessary foundation and context to satisfy the Rule 404(b) requirements. The trial judge also failed to require the prosecutor to provide the rudiments of foundation and factual context of the prior acts. Worsening the prejudicial effect, no limiting instructions were given to the jury at the time of admitting the prior acts testimony The Court had the opportunity to limit the prejudicial effect at the time the evidence was admitted, but did not use it.
At the end of the trial, the trial judge provided the jury one limiting instruction on prior acts. TR at 150. The jury was instructed that the fact that the “Tribes have offered evidence that the defendant at times engaged in other similar ciimes” and cautioned the jury that this evidence should only be used to show proof of motive, a plan, and knowledge. The instruction is defective. As explained above, no evidence was properly offered to demonstrate that the Defendant had engaged in other similar crimes. Instead, by innuendo and implication, the prosecution painted the Defendant as a dangerous and disreputable character. Moreover, this defective instruction was too little, too late. On numerous occasions throughout the trial, evidence had been improperly admitted without a limiting instruction. By the time the trial ended and the one conclusory limiting instruction was offered, the horses were long gone from the barn.
Thus, even assuming arguendo the prior acts testimony was admitted properly, the prejudicial effect is serious in this case. Give the fact prior acts testimony was admitted in direct contravention of the requirements of Rule 404(b), the prejudicial affect of not providing accurate, contemporaneous limiting instructions is fatal.
The end result is that numerous witnesses were allowed to offer ill-defined, and undefined testimony regarding prior *90 acts that showed Bo Sorrell to be a lawbreaker and wife beater. With proper foundation and factual back-up, it is possible that all of the prior acts testimony offered could have been admitted consistent with Rule 404(b). The prosecution simply failed to carry out its burden to present sufficient foundation and context with each of the prior acts to satisfy Rule 404(b).
III. Reversible Error
Reversal is only warranted upon a finding that the error of admitting the prior acts evidence was not harmless. See Rule 7, CSKT Rules of Appellate Procedure. Where, as here, the error does not rise to a constitutional dimension, it is “not harmless unless it is more probable than not that the erroneous admission of the evidence did not affect the jury’s verdict.” United States v. Brown, 880 F.2d at 1016. In these situations, the error is most often found not harmless when the prosecution relies heavily on the prior acts evidence in its arguments. See, e.g., United States v. Brooke, 4 F.3d at 1488; United States v. Brown, 880 F.2d at 1016. However, even brief references may be sufficient for reversal if the case is a close one. United States v. Hill, 953 F.2d at 458.
The irony here is that the prosecution had considerable direct evidence to convict Bo Sorrell of the charges without substantial reliance on prior acts testimony. It had the taped confession of the victim. It had pictures of the victim. It had the testimony of officers and neighbors present immediately after the incident. Nevertheless, the prosecution decided to pursue prior acts testimony from four different witnesses. The prosecution attempted to place strong reliance on the prior acts testimony during the trial.[4] The prosecution could have been more selective about which of the prior act incidents it really needed to prove its case, and provide the foundation and factual context to satisfy Rule 404(b). But it did not. Instead it used a shotgun approach.
The cumulative error and cumulative effect of the numerous witnesses and prior acts admitted into evidence—without contemporaneous limiting instructions—can not be overlooked here. This cumulative error very well may have impermissibly affected the jurors’ impressions of Bo Sor-rell. As a result, “it is impossible ... to say it is more likely than not that [the prior acts evidence] did not affect the jury’s verdict.” United States v. Brown, 880 F.2d at 1016. As a result, this Court can not conclude that the error was harmless. We find that the trial court abused its discretion in admitting the prior acts testimony for the reasons discussed above. The conviction of Bo Sorrel must be reversed.
IV. Other Grounds for Appeal
The Court having reversed the trial court need not rule on other grounds for appeal, and we decline to do so. The Court does find, however, that the trial court did not abuse its discretion in allowing Jacque Morigeau to testify as an expert. The Court encourages the trial courts, to the maximum extent practicable, to rule on prior acts admission questions before trial and not in the presence of the jury. This will minimize prejudicial effect.
*91 The conviction on all charges is REVERSED.
SO ORDERED.

. Circuits vary in the tests they employ to determine the admissibility of prior acts evidence. For example, the Sixth and Tenth Circuits apply a test roughly similar to the Ninth Circuit’s. See, e.g., United States v. Myers, 123 F.3d 350, 362-363 (6th Cir.1997)(‘[W]e first review for clear error the district court's factual determination that the other acts occurred. Second, we examine de novo the district court's legal determination that the evidence was admissible for a legitimate purpose. Finally, we review for abuse of discretion the district court's determination that the probative value of the other acts evidence is not substantially outweighed by its unfairly prejudicial effect”)(internal quotations omitted); United States v. Hogue, 827 F.2d 660, 662-663 (10th Cir.1987)(admissible prior acts evidence "(1) must tend to establish intent, knowledge, motive, identity or absence of mistake or accident; (2) must also be so related to the charge that it serves to establish intent, knowledge, motive, identity or absence of mistake or accident; (3) must have real probative value, not just possible worth; and (4) must be close in time to the crime charged”). The Third and Fourth Circuits adhere more closely to the plain text of Rule 404(b). See, e.g., United States v. Murray, 103 F.3d 310, 316 (3d Cir.1997)("for evidence of other crimes, wrongs, or acts to be admissible, it must be relevant to prove something other than the character of the person in order to show he acted in conformity therewith”)(internal quotations omitted); United States v. Mark, 943 F.2d 444, 447 (4th Cir.1991 )(Prior acts evidence is admissible when it is: "(1) relevant to an issue other than character, (2) necessary, and (3) reliable")(citing United States v. Rawle, 845 F,2d 1244, 1247 (4th Cir.1988)).

. This conclusion obviates the need to analyze the domestic violence evidence under the fourth or “similarity” prong of the Rule 404(b) test. Since both the past acts and the charged crime in question here relate to domestic violence, this prong would likely have been satisfied.

. In its objection to the motion in limine, the prosecution argues that there are no prior acts to respond to because it has made no request to the court to introduce prior acts. Yet, at trial, the majority of its witnesses testify to prior acts without prior disclosure to the Defendant of the general nature of the testimony. See February 29, 1996 Objection to Motion in Limine.

. The prosecution made only passing mention to the prior acts in its opening and only one direct statement about them in its closing arguments. TR at 153. However, that one reference in closing dramatically overstated the testimony that was actually elicited. Officer Birthmark said nothing about the gun being discharged by a child in his testimony about that incident, though the prosecutor made this claim in her closing. TR at 47.